EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR PACHECO STEVENSON, acusado y apelante.

*Número:* 16533. *Resuelto:* 17 de noviembre de 1961.

---

*R. Davis Vázquez,* abogado del apelante; *J. B. Fernández Badillo, Procurador General* y *Juan A. Faría, Procurador General Auxiliar,* abogados de El Pueblo, apelado.

Sala integrada por el Juez Presidente señor Negrón Fernández, como Presidente de Sala, y los Jueces Asociados señores Blanco Lugo y Dávila.

PER CURIAM: El apelante y otra persona de nombre Juan Figueroa fueron acusados de asesinato en primer grado. El juicio se celebró conjuntamente y el jurado rindió un veredicto condenatorio. La víctima antes de morir y en presencia de varias personas, a preguntas de un policía, señaló al apelante como la persona que le había entregado el arma homicida al otro acusado. En apelación, apuntan como errores que dan margen a la revocación: (1) el tenor de las instrucciones sobre declaraciones en artículo de muerte que diera el juez de instancia; (2) el no haber eliminado la parte de la confesión del otro acusado en que mencionaba al aquí apelante; (3) el no haber trasmitido ciertas instrucciones que alega el apelante solicitó que se trasmitieran; (4) el no haber instruido al jurado en el sentido de que podían rendir un veredicto por grados distintos contra cada uno de los acusados y (5) haber admitido en evidencia una fotografía de la víctima tomada en el hospital cuando ya había fallecido.

Al discutir el primero de los errores apuntados el apelante

transcribe sólo una parte de las instrucciones que diera el juez sobre la admisibilidad de declaraciones en artículo de muerte y que leen así:

"La fuerza legal de las declaraciones *'in artículo mortis'* o sea, su credibilidad, descansa en la creencia de que el moribundo consciente de que va a entrar en la eternidad, es incapaz de mentir en el solemne momento en que su espíritu se prepara para entrar en lo desconocido, y por eso la ley exige que el declarante haya perdido las esperanzas de vivir, pues si éstas existen la declaración no puede ni debe ser considerada."

Alega el apelante que como el juez al explicarle al jurado la razón que se expone para hacer admisibles las declaraciones en artículo de muerte, expresó que se considera que una persona en ese estado, es incapaz de mentir, esto pudo confundir al jurado, al extremo de entender que siempre se le debe dar crédito a estas manifestaciones, y que esto obviamente causó perjuicio al acusado.

Ahora, una vez más repetimos que no debe tomarse una parte aislada de unas instrucciones para sostener un error en un recurso de apelación. Las instrucciones, hemos repetido en infinidad de ocasiones, hay que considerarlas en conjunto para poder determinar si se ajustan o no a derecho. El juez de instancia en dos ocasiones distintas, una, cuando se presentó la prueba sobre la declaración en artículo de muerte, otra, al instruir al jurado antes de éste comenzar a deliberar, hizo claro sobre cuál era la función del jurado al considerar esta prueba. En la primera ocasión le indicó:

". . . Sin embargo, y esto es sumamente importante, damas y caballeros del Jurado. Son ustedes las damas y caballeros del Jurado, como Jueces de los hechos, los llamados a determinar, primero, si como cuestión de hecho esas manifestaciones que se le atribuyen a Angela Santos Bracero constituyen o no una declaración en artículo de muerte, o sea, un Dying Declaration. Ustedes son los que habrán de decidir como Jueces de Hecho, si esas manifestaciones son un Dying Declaration o no son un Dying Declaration y son ustedes además, como Jueces de los

hechos, los llamados a determinar, si ustedes creen esas manifestaciones o si ustedes no las creen. Es decir, son ustedes los llamados a determinar el grado de credibilidad, el grado de veracidad que le merecen esas manifestaciones que se le atribuyen a Angela Santos Bracero por conducto del Dr. Ventimilla."

En la segunda manifestación, lo que sigue:

"Si el jurado queda satisfecho, como cuestión de hecho, por la apreciación de la prueba aquí desfilada que Angela Santos Bracero se hallaba en peligro inminente de muerte y que ella conocía ese estado, es decir, que ella estaba consciente de que estaba grave, puede entonces considerar la declaración de dicha moribunda y es de la incumbencia del jurado apreciar si tal declaración fue prestada y si dicha declaración es o no cierta. Es decir, si el jurado queda satisfecho por la apreciación de la prueba, que Angela Santos Bracero se hallaba en peligro inminente de muerte en el momento en que hizo la declaración y que ella conocía ese estado, puede entonces considerar su declaración y es de la incumbencia del jurado apreciar, como toda otra prueba, si tal declaración fue prestada y si ella es o no cierta."

Esto dispone del primer error.

En la confesión que prestó el coacusado y que fue admitida en evidencia se hace alusión al apelante. Se le preguntó:

"P. ¿A Bonye (el apelante) le dijiste algo de lo que te propones hacer?

R. Si señor, se lo dije la misma noche, que si la encontraba la iba a matar."

Alega que esa parte debió ser eliminada, pues, obviamente le tenía que perjudicar al ser considerada por el jurado. Pero el juez al instruir al jurado le hizo claro que no debían tomar en consideración nada que se dijera en la confesión en contra del otro acusado. Se expresó así el juez: "Aquellas manifestaciones o actos que se atribuyen a Héctor Pacheco Stevenson [aquí apelante] por voz de Juan Figueroa Ortiz que incriminen a Héctor Pacheco Stevenson, no pueden ser tomadas en consideración por ustedes al resolver el caso contra Héctor Pacheco Stevenson" y se extendió en otras considera-

ciones sobre el mismo asunto para hacerle claro al jurado la cuestión. Y del récord surge que el juez le preguntó a los señores del jurado si habían entendido y que éstos manifestaron que sí. (T. de E. págs. 459–60.) No se cometió el segundo error.

El tercer error apuntado se refiere a que "[e]rró el tribunal inferior al denegar las siguientes instrucciones solicitadas por el apelante:

"1. La credibilidad y peso de las dying declarations son cuestiones a determinarse por el jurado que no son necesariamente obligatorias para el mismo, ni concluyentes en cuanto a los hechos a que se refieren.

Los dying declarations deben considerarse con cautela. Deben pesarse teniendo en mente la ausencia de la oportunidad por parte del acusado de contrainterrogar a la persona declarante y de las condiciones mentales y físicas en que se encuentra, su conducta y si estaba influenciado por malicia, deseos de venganza o prejuicio.

2. La mera presencia de una persona en el sitio en que se comete un delito, y su conocimiento de que tal delito se va a cometer no es suficiente en derecho para sostener la convicción de una persona acusada como coautora de un delito. Es necesario probar más allá de duda razonable el que el acusado participa de la intención del que comete el delito, en este caso la muerte de la interfecta. Es decir, debe haber unidad de propósito y un acuerdo de las mentes en producir un resultado específico. El acusado debe aconsejar e incitar al autor del delito para que lo cometa."

Ninguna de estas instrucciones aparecen en el expediente del caso como solicitadas por la defensa. Ahora, la primera parte de la primera instrucción está incluida en las que trasmitió el juez al considerar el tema de las declaraciones en artículo de muerte.

En cuanto a la segunda instrucción referente a la presencia de una persona en el sitio donde se comete un delito si bien no aparece como solicitada en los términos específicos en que está redactada ahora, lo cierto es que al terminar el

juez con las instrucciones el abogado del apelante manifestó: "Vamos a tomar excepción así mismo de la negativa del Honorable Tribunal a instruir al jurado en cuanto a que una persona que presencia la comisión de un delito y no interviene para evitarlo no puede ser hallado culpable conjuntamente con el autor a menos que tenga la obligación legal de intervenir." Y esto consideramos equivale a una solicitud de instrucción en los términos que está redactada la arriba transcrita. Ahora, lo cierto es que el juez dio una instrucción específica sobre esta cuestión que debe considerarse teniendo en cuenta el hecho de que en el caso hay prueba al efecto de que el apelante le dio el arma homicida al otro acusado. Dicen así las instrucciones:

"La mera presencia de una persona en el sitio donde se comete un delito y su conocimiento de que tal delito se va a realizar, no es por sí solo suficiente en derecho para sostener la convicción de esa persona como coautora de ese delito, sino que es necesaria la presentación de prueba que demuestre la participación en alguna de las formas que establece el artículo 93 del Código Penal de Puerto Rico, en la comisión de los hechos delictuosos. Para que una persona pueda ser convicta como coautora de un delito debe probarse más allá de toda duda razonable su participación en la comisión de ese delito. Es decir, que debe probarse una unidad de propósito y un acuerdo de las mentes en producir un resultado específico, en este caso la muerte de Angela Santos Bracero."

El cuarto error señala que el juez debió dar instrucciones al efecto de que el jurado podía rendir un veredicto por grados distintos contra cada uno de los acusados. Pero es que el juez así lo hizo. Instruyó al jurado en esta forma:

"Si los señores del jurado tienen duda en cuanto a si se ha cometido un delito de asesinato en primer grado o en segundo grado o un delito de homicidio voluntario, es su deber darle el beneficio de la duda a los acusados y declararlos culpables del delito más bajo, o sea, de aquel sobre el cual no tengan duda, de entender fuera de duda razonable que dicho delito fue cometido por los acusados.

"Si los señores del jurado creen que no se ha realizado ningún delito o que no se ha justificado plenamente que la muerte de Angela Santos Bracero se debió a acto alguno de los acusados, ó si creen que no se ha probado en manera alguna su culpabilidad, o si tienen duda de ello razonable y fundada, o si creen que no se han establecido los ingredientes del delito o alguno de ellos, o si tienen duda razonable y fundada sobre este último particular, en cualquiera de esos casos deben declarar a los acusados no culpables. También el jurado puede declarar culpable a uno de los acusados y absolver al otro y la duda la pueden aplicar lo mismo a uno que a otro. De manera que pueden creer que uno de los acusados cometió el delito y que el otro no lo cometió, o absolver a uno y condenar al otro, o pueden creer que un acusado cometió el delito y tener duda razonable y fundada en cuanto a si el otro lo cometió o no. De suerte que pueden encontrarlos culpables a ambos, en caso que crean fuera de duda razonable que se ha cometido el delito tal y como se ha imputado y pueden declarar culpable a uno y absolver al otro, pueden absolverlos a los dos, si tienen duda en cuanto a ambos, o pueden condenar a uno y absolver a otro, si tienen duda en cuanto a que uno de ellos cometió el delito."

Así, si podían absolver a uno y condenar al otro, podían declarar a uno culpable de un delito de menor grado que al otro. Tampoco se cometió este error.

■ En cuanto al quinto error apuntado al efecto de que se admitió una fotografía de la víctima, ya hemos resuelto que eso no constituye error cuando, como en el presente caso, se admite con el propósito de demostrar el número de las heridas inferidas y la gravedad de las mismas. *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471 (1961) y *Pueblo* v. *Fournier*, 80 D.P.R. 390 (1958).

No se cometieron ninguno de los errores apuntados. *Se confirmará la sentencia apelada.*